IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WILLIE F. HALE,
      Petitioner,

vs.                              Case No.:  5:11cv265/MMP/EMT

FLORIDA PAROLE COMMISSION
and KENNETH S. TUCKER,
      Respondents.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (doc. 1).  Respondents Florida Parole Commission ("FPC") and Kenneth S. Tucker ("FDOC Secretary") filed answers and relevant portions of the state court record (docs. 11, 13).  Petitioner filed a reply (doc. 16).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).[1]  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* docs. 11, 13).  Petitioner's history with the FPC began with his commitment to the

---

[1] Even though Petitioner filed his petition pursuant to § 2241, and the petition does not collaterally attack his state court conviction but instead decisions of the FPC and FDOC, his petition is governed by both § 2241 and § 2254. *See* Thomas v. Crosby, 371 F.3d 782, 787 (11th Cir. 2004).

FDOC for sale of cocaine and possession of cocaine with intent to sell or deliver on August 7, 1991 (doc. 11, Ex. A).  He was sentenced as a habitual violent offender to concurrent terms of twenty-five (25) years of imprisonment without the possibility of parole for ten (10) years (doc. 11, Exs. A, C).

On July 23, 2008, the FPC issued an order that Petitioner be released onto conditional release supervision on his tentative release date as determined by the FDOC (doc. 11, Ex. B).  On August 30, 2008, Petitioner corresponded with the FPC, challenging his placement on conditional release supervision (doc. 11, Ex. C).  The FPC responded to Petitioner's correspondence on September 16, 2008 (*id.*).  On October 3, 2008, the tentative release date established by the FDOC, Petitioner was released onto conditional release supervision, which would terminate upon expiration of the maximum period for which he was sentenced (doc. 11, Ex. D).

On February 17, 2009, Petitioner was arrested for violating condition 7 of his conditional release by unlawfully failing to register as a career criminal with local law enforcement or the Florida Department of Highway Safety and Motor Vehicles (Ex. E at 2–52).  A revocation hearing was held on July 22, 2009 (*id.*).  The parole examiner found Petitioner guilty of wilfully and substantially violating the terms and conditions of his conditional release and recommended that his supervision be revoked (*id.*).  On September 16, 2009, the FPC revoked Petitioner's conditional release, effective February 17, 2009, based upon the hearing examiner's determination that Petitioner violated the conditions of his supervision as stated in the hearing report (Ex. F).  The FPC ordered Petitioner returned to FDOC custody and denied Petitioner credit for time on conditional release (*id.*).

On January 19, 2010, Petitioner sought judicial review of the FPC's decision, as well as the FDOC's computation of his sentence, by filing a petition for writ of habeas corpus in the Circuit Court in and for Washington County, Florida, Case No. 10-031-CA (Ex. G).  He challenged his confinement on Fifth and Fourteenth Amendment grounds, arguing:  (1) there was no competent substantial evidence showing he wilfully violated the conditions of his release; (2) he completed his sentence the week prior to his release on conditional release supervision and therefore was not subject to supervision; and (3) the FDOC illegally forfeited eight (8) years of earned gain time (*id.*). On June 9, 2010, the state circuit court denied the petition  (Ex. I).  Petitioner sought review of the decision by filing a petition for writ of certiorari in the Florida First District Court of Appeal ("First

DCA"), Case No. 1D10-3428 (Ex. J).  In his petition, he argued the same issues raised in the lower court (*id.*).  The First DCA denied the petition on the merits on October 20, 2010 (*id.*).  Hale v. Fla. Parole Comm'n, 48 So. 3d 840 (Fla. 1st DCA 2010) (Table).  The First DCA also denied Petitioner's motion for rehearing and issued the mandate December 7, 2010 (Ex. J).  Petitioner sought discretionary review by the Supreme Court of Florida, Case No. SC10-2403, but the court dismissed the petition for review for lack of jurisdiction on December 20, 2010.  Hale v. Fla. Parole Comm'n, 51 So. 3d 1154 (Fla. 2010) (Table).  Petitioner then sought review of the state supreme court's decision by filing a petition for writ of certiorari in the United States Supreme Court, Case No. 10-8895 (*see* Ex. K).  The Supreme Court denied the petition on March 25, 2011 (Ex. K).  Hale v. Fla. Parole Comm'n, No. 10-8895, 131 S. Ct. 1797 (2011) (Mem).

Petitioner filed the instant federal habeas action on July 27, 2011 (doc. 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v.

Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity

of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill, 2010 WL 609844, at *18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS[3]

    A.    Ground One:  "There was no substantial evidence to support the willful wanton [sic]
          of the violation on the Petitioner from the Florida Parole Commission."

          Ground Two:  "Petitioner did register as a career offender with the D.H.S.M.V."

          Ground Three:  "The Petitioner was arrested without a warrant being served on him
          and then charged with failing to register as a career offender, while being a detainee in jail."

Petitioner contends he was released on October 3, 2008, after completing his 25-year sentence in its entirety (doc. 1 at 3).  He states he was compelled to be illegally placed on conditional release supervision for 2,730 days (approximately eight years), which was the same amount of incentive gain time he had already earned in he FDOC (*id.* at 3, 6).  Petitioner contends the FPC and FDOC thus extended his sentence by eight years (*id.* at 6).  Additionally, Petitioner asserts when he was released from incarceration, he registered his address with the state Department of Highway Safety and Motor Vehicles ("DHSMV") and his probation officer, Ms. Turner (*id.* at 4).  He states the address he registered was Clifford Hill Outreach, 4509 E. Giddens Ave., Apt. A, Tampa, Florida, which is a transitional housing program for ex-offenders (*id.*).  Petitioner states he was told by the co-owner of the property to move to another property at 1716 Idell St., Tampa,

_____

[3] The court consolidated some of Petitioner's claims for organizational purposes.

Florida, which was also owned by Clifford Hill Outreach (*id.* at 4, 6–7).  Petitioner states he notified Ms. Turner of his new address the next day, and she advised him to "stay put" until she confirmed the new address (*id.* at 6–7).  Petitioner states five (5) days later, Ms. Turner visited his new residence and advised him to report to his new probation officer, Ms. Chaviano (*id.*).  Petitioner states he reported to Ms. Chaviano every month, and she wrote down information that Petitioner needed to know, because of his mental and physical ailments, for which he took eight medications (*id.* at 6–7).  Petitioner states on February 17, 2008, the day after he had made his monthly report to Ms. Chaviano, he was arrested for failure to register (*id.* at 5).  He states he was arrested without a warrant (*id.*).  He further states the criminal case proceeded through court and was nolle prossed (*id.*).  Petitioner contends his arrest for a charge that was eventually nolle prossed was insufficient grounds to revoke his supervision (*id.* at 7).

The FPC contends the issues raised by Petitioner present only state law issues, which are not cognizable in federal habeas (doc. 11 at 14–17, 23–24).  The FPC additionally contends Petitioner was properly placed on conditional release supervision pursuant to Florida Statutes § 947.1405, and the length of his supervision was properly determined in accordance with Florida law (*id.* at 20–22).  The FPC also contends that it properly revoked Petitioner's supervision, because there was competent and substantial evidence to support the hearing examiner's finding that Petitioner wilfully violated a substantial condition of his supervision (*id.* at 17–20).  The FPC contends the fact that the criminal charge was dropped was irrelevant for purposes of the conditional release revocation proceedings, because revocation may be based on a releasee's noncompliance with supervision terms and conditions, and does not require a criminal conviction for the noncompliant behavior (*id.* at 24–25).  Finally, the FPC contends Petitioner's claim that he was arrested without a warrant is without merit, because the detective had probable cause to arrest Petitioner for allegedly violating state law, *see* Florida Statutes § 947.141(7) (warrantless arrest of releasee for felony permitted if officer has probable cause); § 947.22(2), (3) (officer may arrest releasee/parolee without a warrant if reasonable/probable grounds exist that releasee/parolee violated terms and conditions of supervision) (*id.* at 24).

Petitioner's claim of insufficiency of the evidence derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict.  Although the

Supreme Court has not specifically held that the Due Process Clause requires sufficiency of the evidence in proceedings involving revocation of probation, parole, or other types of supervision, it has suggested this.  *See* Black v. Romano, 471 U.S. 606, 615–16, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985) ("The decision to revoke Romano's probation satisfied the requirements of due process . . . . The courts below concluded, and we agree, that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation."); *see also* Douglas v. Buder, 412 U.S. 430, 93 S. Ct. 2199, 37 L. Ed. 2d 52 (1973) (probation revocation invalid under Due Process Clause where there was no evidentiary support for finding that probation conditions were violated).  However, as recognized by the Eleventh Circuit, the Supreme Court has not established that due process in a revocation proceeding requires proof beyond a reasonable doubt that the parolee or conditional releasee committed the alleged violation.  *See* United States v. Taylor, 931 F.2d 842, 848 (11th Cir. 1991) (there is no requirement in a probation revocation hearing to prove beyond a reasonable doubt that the defendant committed the alleged acts; all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation).  Indeed, the Supreme Court has not specifically stated the standard of proof that must be met in revocation proceedings to satisfy the Due Process Clause. *See, e.g.*, Black, 471 U.S. at 615–16 ("Bearden v. Georgia [, 461 U.S. 660, 666, and n. 7, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983)] recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution.  We have no occasion in the present case, however, to decide whether concerns for fundamental fairness prohibit the automatic revocation of probation in any other context."); Douglas, *supra*.

Under Florida law, it is the hearing examiner's function to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact.  *See* Heifetz v. Department of Business Regulation, 475 So.2d 1277, 1281 (Fla. 1st DCA 1985).  The FPC is bound to accept the hearing examiner's findings if the findings are supported by competent, substantial evidence.  *See* Tedder v. Fla. Parole Comm'n, 842 So. 2d 1022, 1025 (Fla. 1st DCA 2003) (Commission is not at liberty to reweigh the evidence considered by the hearing examiner where the examiner's finding is supported by competent, substantial evidence); *see also* Richardson v. Fla. Parole Comm'n, 924 So. 2d 908 (Fla.

1 st DCA 2006) (Commission improperly re-weighed evidence in rejecting examiner's conclusions instead of determining whether competent, substantial evidence supported examiner's findings). If, as is often the case, the evidence presented supports two inconsistent findings, it is the hearing officer's role to decide the issue one way or the other.  Tedder, 842 So.2d at 1025.

In Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), the Supreme Court set forth the process that is due to a parolee arrested for violating his parole.  The Court held that upon a parolee's arrest for a parole violation, due process requires that a preliminary hearing be conducted, at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after the arrest, to determine whether there is probable cause or reasonable ground to believe that the parolee committed acts that would constitute a violation of the conditions of his parole.  Id. at 485 (citation omitted).  The Court noted that the preliminary hearing should be conducted by someone other than the parole officer who reported the violations.  Id. at 486.  The Court held that the parolee should be given notice that the preliminary hearing will take place and that its purpose is to determine whether there is probable cause to believe he committed a parole violation; and the notice should state what parole violations have been alleged.  Id. at 487.  The Court further held that at the hearing the parolee may appear, speak in his own behalf, and present relevant information.  Id.  Further, on request of the parolee, the person who gave adverse information on which parole revocation is to be based should be made available for questioning; however, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.  Id. The Court also held that the hearing officer must make a summary of what occurred at the hearing, determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation, and state the reasons for his determination and indicate the evidence he relied on, but formal findings of fact and conclusions of law are not required.  Id.

Additionally, the Court held that if the parolee desires a hearing prior to the final decision on revocation, due process requires that a hearing be held.  Id. at 488.  At the final hearing, minimum requirements of due process include:

 (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine

adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey, 408 U.S. at 488–89. A conditional releasee is entitled to the same level of procedural protections as a parolee or a probationer, that is, the protection outlined in Morrissey. *See, e.g.,* Schmidt v. Bondi, No. 5:12cv226/MMP/EMT, 2012 WL 4717794, at *2 (N.D. Fla. Oct. 1, 2012).

In Petitioner's state habeas petition, he challenged the sufficiency of the evidence to support the parole revocation, and he also challenged the legality of his placement on conditional release supervision instead of being released from incarceration under no type of supervision (Ex. G). The state circuit court adjudicated the claims as follows:

> The Conditional Release statute provides in pertinent part:
>
> Any inmate who is convicted of a crime committed on or after October 1, 1988, which crime is contained in category 1, category 2, category 3, or category 4 of Rule 3.701 and Rule 3.988, Florida Rules of Criminal Procedure, and who has served at least one prior felony commitment at a state or federal correctional institution or is sentenced as a habitual or violent habitual offender pursuant to s. 775.084, shall, upon reaching the tentative release date or provisional release date, whichever is earlier, as established by the Department of Corrections, be released under supervision subject to specified terms and conditions.
>
> § 947.1405(2), Fla. Stat.
>
> Habitual offenders after 1988 who have accrued gain-time are considered eligible for conditional release supervision. Lincoln v. Florida Parole Commission, 643 So. 2d 668, 617–672 (Fla. 1st DCA 1994); Deason v. Florida Department of Corrections and Florida Parole Commission, 705 So. 2d 1374 (Fla. 1998); Hull v. Moore, 790 So. 2d 560, 562 (Fla. 1st DCA 2001) ("An inmate who commits certain types of crimes and who has served time for a prior felony or who is sentenced as a habitual offender must be released into the conditional release program, the length of which is determined by the number of days of gain time awarded."). This supervision lasts until the date on which the inmate would have been released if no gain-time had been awarded. Evans v. Singletary, 737 So. 2d 505, 507 (Fla. 1999). If the inmate's supervision is revoked, his gain-time is forfeited by the Department of Corrections and he is returned to prison to serve the remaining part of his

sentence. Hull; Evans; supra. As Petitioner committed his drug offenses in Case Number 91-1492-CFA6-01 on February 14, 1991, and Petitioner was sentenced as a habitual offender, he appropriately qualified for conditional release supervision; and placing him on supervision was not illegal. See also e.g. Duncan v. Moore, 754 So. 2d 708 (Fla. 2000) (placing an individual on Conditional Release supervision does not violate any constitutional rights under the Double Jeopardy Clause, Ex Post Facto Clause, Due Process Clause, or the Equal Protection Clause, and does not subject an individual to cruel and unusual punishment).

Petitioner's implied claim that the charge of his failing to properly register was nolle prossed by the state attorney's office and therefore could not be a basis for revocation is without merit. See Taylor v. U.S. Parole Commission, 734 F.2d 1152, 1155 (6th Cir. 1984) (parole violation can be based on criminal charges that were dismissed prior to trial) (internal citation omitted); State v. Green, 667 So. 2d 959, 961 (Fla. 2d DCA 1996) (holding that "[i]t has long been the law that a new criminal charge can result in a violation of probation even if the defendant is acquitted of the new offense."). Accord Cavalcante v. Florida Parole and Probation Commission, 414 So. 2d 658, 659 (Fla. 1st DCA 1982).

Petitioner was provided his minimum due process rights in the revocation process. Minimum [d]ue process rights afforded to inmates in revocation proceedings include: written notice of the violations; opportunity to request evidence disclosed; opportunity to be heard and present witnesses and evidence; right to confront and cross-examine witnesses; a neutral and detached hearing body; and a written statement by the fact-finder as to the evidence relied upon and the reasons for revocation. Addison v. Florida Parole Board, 281 So. 2d 906, 907 (Fla. 1st DCA 1973), citing Morrissey v. Brewer, 408 U.S. 471 (1972); Section 947.141, Fla. Stats. F.A.C. Rule 23-23.011(4).

Also contrary to Petitioner's contention, there was competent and substantial evidence to support the hearing examiner's findings that Petitioner willfully[FN 1] violated his conditional release supervision. The competent and substantial evidence consisted of the testimony of conditional release officers Gloria Turner and Angela Chaviano, Detective Cochran, Helen Pridgen, as well as documentary evidence. The testimony and documentation introduced at the hearing show that Petitioner violated condition 7 by failing to obey all laws, ordinances or statutory conditions of conditional release in that on or about November 14, 2008, in Hillsborough County, Florida he did unlawfully violate Section 775.261(4)(c)(1), Fla. Stats. by failing to register as a career criminal with local law enforcement or the Florida Department of Highway Safety and Motor Vehicles. The hearing examiner's finding of guilt as to a willful and substantial violation is supported by the following, as stated by the hearing examiner:

Releasee was found guilty based on the testimony of Detective Cochran that he arrested the releasee on 02/17/09, because the releasee's current address did not match the information in the Florida DHSMV database. Releasee was also found guilty based on the testimony of CPS Turner that she provided the releasee with his Notice of Responsibilities on 10/07/08. The releasee appeared to understand the information in the document and checked that he read the document and understood it and then printed his name. In addition, the releasee was provided with his Notice of Responsibilities on 09/28/08, where the document shows that the information was read to the releasee, but he refused to sign the document. Also, the releasee was provided with his Instructions to the Offender by CPS Turner, dated 10/06/08, where the releasee printed his name. The releasee testified that he did not sign the document that he was asked to sign was [sic] because he didn't understand them because he felt they didn't apply to him based on his sentence. The releasee was also found guilty based on his testimony that he registered with FL DHSMV when he was released from prison, but did not report his change of address because he was not aware he had to do so. However, the releasee also testified that he was aware that Tampa police officers came by his first residence on a regular basis checking for address compliance. The releasee testified that he has two years of college and can read unless he is taking some of his medications. During questioning, the releasee had no problems recalling information relevant to his case. The FL DHSMV printout and Tampa Police Department Report #09-99082 was used as supporting evidence.

The sole function of habeas corpus is to test the legality of detention, Sneed v. Mayo, 66 So. 2d 865, 870 (Fla. 1953); State ex. rel. Risatti v. Eaton, 161 So. 2d 549, 550 (Fla. 2d DCA 1964), and the writ of habeas corpus cannot issue if the Petitioner is not entitled to immediate release from confinement. Shack v. State, 194 So. 2d 53 (Fla. 1st DCA 1967) (holding that a writ of habeas corpus should not be issued where petitioner is not entitled to immediate release from his/her confinement). Petitioner has failed to demonstrate that his detention is unlawful or that he is entitled to immediate release from confinement.

FN1: There are many illustrations of willful and substantial violations of supervision and accordingly the hearing examiner did not err in finding that a willful and substantial violation occurred in this case. See Delee v. State, 816 So. 2d 677, 679 (Fla. 3d DCA 2002) (failure to file monthly report once can be a substantial violation); Bland v. State, 896 So. 2d 937 (Fla. 1st DCA 2005)

> (single association with persons engaged in criminal activity
> sufficient for willful and substantial violation of probation); <u>Remich
> v. State</u>, 696 So. 2d 1270 (Fla. 2d DCA 1997) (appellate court
> affirmed trial court's finding that leaving residence to attend
> unauthorized activities willful and substantial violation).

(Ex. I).  Petitioner sought review of the state circuit court's decision by the First DCA, and the appellate court affirmed (Ex. J).

Initially, this federal court must abide by the state court's interpretation of state law.  *See* <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983).  Therefore, this court is bound by the state court's determination that under Florida law, upon reaching his tentative release date established by the FDOC, Petitioner was properly released under conditional release supervision.  This court is also bound by the state court's determination that Petitioner's supervision lasted until the date on which he would have been released if no gain-time had been awarded.  Accordingly, Petitioner is not entitled to relief on his claim that his release under conditional release supervision for 2,730 days (approximately eight years) was illegal.

Additionally, Petitioner failed to demonstrate that the state court's adjudication of his due process claim was contrary to clearly established federal law.  Petitioner has not shown that the state court reached an opposite conclusion from the United States Supreme Court on a question of law.  Furthermore, Petitioner has not identified any United States Supreme Court case with a set of materially indistinguishable facts that was decided differently from his case, nor is the court aware of any such case.  Therefore, Petitioner has failed to show that the state court's decision was contrary to Supreme Court law.

Petitioner has additionally failed to show that the state court's decision was an unreasonable application of clearly established federal law.  As discussed *supra*, the Supreme Court has not established the standard of proof required to support a revocation of conditional release supervision.  Furthermore, the record contains evidence to support the FPC's determination that Petitioner violated the condition of his parole requiring that he obey the law.  The basis for the revocation was Petitioner's willful failure to report his new address to the DHSMV, as required by Florida Statutes

§ 775.261(4)(d).  Section 775.261(4)(d) provides that within two working days after any change of the career offender's residence, the career offender must report in person to a driver's licence office and shall be subject to the requirements of paragraph (c), including securing a Florida driver's license, renewing a license, or securing an identification card, paying the costs for issuing or renewing the license or identification card, and providing fingerprints.  Fla. Stat. § 775.261(4)(c), (d).  The hearing examiner heard firsthand the testimony of Detective Cochran, both of Petitioner's supervision officers, and Petitioner himself, and weighed the credibility of the testimony.  In light of the hearing examiner's findings and the record before the FPC, the state court's determination that there was competent, substantial evidence to support the revocation was not unreasonable.  The fact that the criminal charge was nolle prossed does not change this conclusion.  *See* United States v. Jolibois, 294 F.3d 1110, 1114 (9th Cir. 2002) (upholding a revocation of supervised release based upon actual conduct where the defendant was not prosecuted for that conduct); Taylor v. U.S. Parole Comm'n, 734 F.2d 1152, 1155 (6th Cir. 1984) (parole violation may be based on criminal charges that were dismissed prior to trial) (internal citation omitted); State v. Jenkins, 762 So. 2d 535 (Fla. 4 DCA 2000) (affidavit of probation violation did not have to be dismissed on the ground that the state had nolle prossed the assault charge that was the basis for the violation of probation, as nolle prosequi at most meant that the state did not have sufficient evidence to meet its burden of proving guilt beyond a reasonable doubt, which was a higher standard than was required to prove the probation violation); *see also* Russ v. State, 313 So. 2d 758, 760 (Fla. 1075) ("An acquittal in a criminal case does not preclude the judge from determining that a parole or probation violation has occurred based upon the same conduct); State v. Green, 667 So. 2d 959, 961 (Fla. 2d DCA 1996) (same); Cavalcante v. Fla. Parole and Prob. Comm'n, 414 So. 2d 658, 659 (Fla. 1st DCA 1982) (same).

Moreover, the record demonstrates Petitioner received all of the procedural protections required under Morrissey.  His allegation that he was arrested without a warrant does not warrant relief, because the record demonstrates the FPC issued a Warrant for Retaking Conditional Releasee on February 23, 2009, after Petitioner's arrest on the criminal charge of failure of a career offender to comply with the requirements of the registration statute (Ex. E at 35).  The validity of Petitioner's

arrest for the underlying criminal charge is irrelevant to the legality of the revocation of conditional release supervision at issue in this habeas proceeding.

For these reasons, Petitioner is not entitled to federal habeas relief on Grounds One, Two, and Three.

B.     Ground Four: "The Petitioner was never awarded the 2,730 days worth of incentive gain time that Petitioner had earned before he was release[d] from prison on October 3, 2008, that the Department of Correction[s] (DOC) forfeit[ed] from the tolling of his incentive gain time all through Petitioner's sentence."

Petitioner contends the FDOC unlawfully increased his sentence upon his return to incarceration after the revocation of conditional release by forfeiting the 2,730 days of incentive gain time he had earned during his pre-supervision incarceration (doc. 1 at 5, 7–8).

The FPC defers to the FDOC on this issue (doc. 11 at 23, 25–26).  The FDOC argues Petitioner failed to exhaust state court remedies regarding this claim (doc. 13 at 7).  The FDOC contends Petitioner completed the administrative grievance process with the FDOC regarding his gain time, but he did not take the next step of filing a claim in state court (*id.* at 7, 9).  Therefore, the gain time claim is unexhausted (*id.*).  The FDOC contends state court remedies are available to Petitioner, specifically, a petition for writ of habeas corpus or mandamus in the state circuit court and, if the petition is denied, a petition for writ of certiorari in the Florida appellate court (*id.* at 7–9).  The FDOC thus requests dismissal of the federal habeas petition as to the FDOC (*id.* at 10).  The FDOC submitted copies of Petitioner's administrative grievances with its answer (doc. 13, Ex. B).

The administrative grievances demonstrate that Plaintiff grieved the issue of his sentence computation (doc. 13, Ex. B).  On January 5, 2010, the FDOC's Central Office denied the grievance on the following grounds, in relevant part:

A conditional release eligible sentence must be served in its entirety, either in prison or under supervision.  Further, pursuant to s. 944.28(1), Florida Statutes, upon violation of conditional release, all gain time earned prior to such release is subject to forfeiture.

You were sentenced on 08/07/91 in the Circuit Court of Escambia County to concurrent 25 year terms less 128 days credit for time served prior to sentencing as a habitual violent felony offender pursuant to s. 775.084(4)(a)[FN 1], with a 10 year minimum mandatory in case 91-01492.

The Florida Parole Commission determined both counts in case 91-01492 conditional release eligible sentences and as such, you were released to conditional release supervision on 10/03/08 by their order.

Your maximum expiration date at the time of your release to conditional release supervision on 10/03/08 was calculated as follows:

| | | |
|---|---|---|
| Date Sentence Began | August 7, 1991 | |
| 25 Years in Days | + | 9125 |
| Jail Credit | - | 128 |
| Maximum Expiration Date | March 25, 2016 | |

At the time of your release to conditional release supervision, the 25 year terms were comprised of the following:

| | |
|---|---|
| 128 Days | County Jail Credit |
| 6267 Days | Time Served (from 08/07/91 to 10/03/08) |
| 2730 Days | Net Gain Time |
| 9125 Days | 25 Years in Days |

You returned to the Department's custody on 08/05/09 as a conditional release violator. The Florida Parole Commission issued an order revoking your conditional release on 09/16/09, effective 02/17/09. Pursuant to Florida Statutes s. 944.28(1), the Department forfeited all gain time earned prior to your release to conditional release supervision, a total of 2730 days.

Therefore, the end result is that you are required to serve the gain time forfeiture (or time not served).

> [FN 1] Pursuant to this statute, you are ineligible to receive basic gain time for the duration of your sentences. However, this statute did not preclude you from earning incentive gain time while in service of the mandatory portion of your sentences.

(doc. 13, Ex. B).

Petitioner raised the issue of the FDOC's forfeiting approximately eight (8) years (or 2,730 days) of earned gain time in his state habeas petition filed in the Walton County Circuit Court (Ex. G), which was filed after he had completed the administrative grievance process. He also raised the issue in his petition for review with the First DCA (Ex. J). Based upon this record, the undersigned

concludes Petitioner exhausted his state court remedies regarding the forfeiture of 2,730 days of gain time upon his return to the FDOC upon revocation of conditional release supervision.

While the Eleventh Circuit has not decided whether a State's forfeiture of an inmate's gain time once a prisoner's release is revoked because of a violation of its conditions violates federal law, the Eleventh Circuit has rejected this argument in the context of federal parole. *See* Lambert v. Warden, U.S. Penitentiary, 591 F.2d 4, 8 (5th Cir. 1979) (concluding it is well-settled that once a federal prisoner's release is revoked because of a violation of its conditions, the parole commission "ha[s] the authority to forfeit the [prisoner]'s good-time credit as well as credit for time spent on conditional release").[4] Effective in 1988, prior to Petitioner's commission of the crimes in the instant case, Florida's gain time forfeiture statute was amended to allow the FDOC to forfeit, without notice or hearing, in the case of a prisoner whose conditional release was revoked, all gain time earned before his conditional release. *See* Fla. Stat. § 944.28(1) (1988). Therefore, the FDOC had statutory authority to forfeit Petitioner's gain time upon revocation of his conditional release. *See* Dowdy v. Singletary, 704 So. 2d 1052, 1053–54 (Fa. 1998).

Further, Petitioner's original sentence was not increased as a result of the FDOC's forfeiture of his gain time. At the time he was released on conditional release on October 3, 2008, he had actually served only 6,395 days (6,267 days of time served plus 128 days of pre-sentence jail credit) of the 9,125-day (25-year) sentence originally imposed by the sentencing court in 1991. Through the benefit of gain time, Petitioner was released 2,730 days early to begin a term of conditional release supervision. After the revocation of his supervision, Petitioner was simply being required to serve the remaining 2,730 days of his original 25-year sentence. Therefore, the FDOC did not increase his sentence beyond the original sentence. *See, e.g.*, Logan v. McNeil, No. 5:06cv10/SPM/EMT, 2009 WL 595922, at *4–8 (N.D. Fla. Mar. 6, 2009); Trotter v. McDonough, No. 3:06cv129/RV/EMT, 2007 WL 1655440, at *8–9 (N.D. Fla. June 5, 2007). Accordingly, Petitioner failed to demonstrate he is entitled to federal habeas relief on Ground Four.

## IV.    CERTIFICATE OF APPEALABILITY

---

[4] Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent on the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.


At Pensacola, Florida, this 1st day of November 2012.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).